KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
NIALL M. FRIZZELL - # 311929
nfrizzell@keker.com
RAISA M. CRAMER - # 342390
rcramer@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

COURTNEY COLE individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:25-cv-01097-PCP

**DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: July 17, 2025
Time: 10:00 a.m.
Dept.: Courtroom 8, 4th Floor
Judge: Hon. P. Casey Pitts

Date Filed: February 3, 2025

Trial Date: Not Yet Set

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 2

II. BACKGROUND .......... 3

A. LinkedIn is a professional social networking site with side services hosting both public and subscription-only videos. .......... 3

B. Plaintiff brings a single claim under the VPPA, without alleging disclosure of a user's identity or any private video information. .......... 3

III. ARGUMENT .......... 6

A. Plaintiff fails to allege that LinkedIn is a "video tape service provider." .......... 6

B. Plaintiff fails to allege that she is a "consumer" of video tape services within the meaning of the VPPA. .......... 8

C. Plaintiff fails to allege a disclosure of "personally identifiable information." .......... 10

1. The user's identity .......... 11

2. Identity of the video material .......... 13

3. The connection between the two .......... 14

D. Plaintiff's allegation regarding PII disclosure is implausible in light of judicially noticeable facts. .......... 15

E. Plaintiff fails to allege the requisite scienter. .......... 18

IV. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....19

*Cai v. Datacamp, Inc.*,
Case No. 1:25-cv-00954 (S.D.N.Y 2025) ....3

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) ....8

*Cantu v. Tapestry, Inc.*,
2023 WL 4440662 (S.D. Cal. 2023) ....8

*Carroll v. Chick-Fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. 2024) ....8, 10

*Carroll v. Gen. Mills, Inc.*,
2023 WL 4361093 (C.D. Cal. 2023) ....7, 10

*Casper v. Dotdash Meredith, Inc.*,
Case No. 1:25-cv-02613 (S.D.N.Y 2025) ....3

*Dawson v. National University*,
Case No. 1:25-cv-03498 (N.D. Ill 2025) ....3

*Dawson v. The University of Phoenix, Inc.*,
Case No. 1:25-cv-03497 (N.D. Ill. 2025) ....3

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .... *passim*

*Ferrantino v. San Juan Unified Sch. Dist.*,
2020 WL 5633004 (E.D. Cal. 2020) ....18

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....7, 12

*Heather v. Healthline Media, Inc.*,
2023 WL 8788760 (N.D. Cal. 2023) ....9

*Hernandez v. Chewy, Inc.*,
2023 WL 9319236 (C.D. Cal. 2023) ....8

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .... *passim*

*Kohn v. Crunchlabs, LLC*,
Case No. 1:25-cv-00210 (E.D.N.Y. 2025)....3

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. 2023)....10

*Lambix v. Tesla, Inc.*,
737 F. Supp. 3d 822 (N.D. Cal. 2024)....11

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)....7, 9, 10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....17

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025)....6

*Smith v. Trinity Broad. of Texas, Inc.*,
2024 WL 4394557 (C.D. Cal. 2024)....12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)....17

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)....17

*Tawam v. Feld Entm't. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)....9, 10

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....7

*Walsh v. Cal. Cinema Invs. LLC*,
2024 WL 3593569 (C.D. Cal. 2024)....8

**Statutes**

18 U.S.C. § 2710(a)(1)....8, 9

18 U.S.C. § 2710(a)(3)....10, 13, 14

18 U.S.C. § 2710(a)(4)....6, 7

18 U.S.C. § 2710(b)(1)....8, 18

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTE that on July 17, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable P. Casey Pitts, in Courtroom 8 of the Robert F. Peckham Federal Building and United States Courthouse, at 280 South First Street, San Jose, California 95113, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move to dismiss the complaint filed by Plaintiff Courtney Cole in its entirety and with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; LinkedIn's concurrently filed proposed order, request for judicial notice, declarations of Jessica Liu and Raisa Cramer, and the exhibits attached thereto; on all pleadings and papers on file or to be filed in this action; and on such other argument or evidence as the Court may receive on or before the hearing on this matter.

Dated: April 18, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
NIALL M. FRIZZELL
RAISA M. CRAMER

Attorneys for Defendant
LINKEDIN CORPORATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Courtney Cole ("Plaintiff") has brought a single cause of action against Defendant LinkedIn Corporation ("LinkedIn") for violating the Video Privacy Protection Act ("VPPA"), a 1980s-era statute aimed at protecting video rental store consumers from having their viewing histories disclosed to third parties. Although the VPPA still has applications in the post-Blockbuster era, it has no application here. On multiple essential elements, and for multiple independent reasons, Plaintiff's cause of action fails on the pleadings.

*First*, Plaintiff fails to plausibly allege that LinkedIn is a "video tape service provider" within the meaning of the statute—because it is not. As the complaint itself reflects, LinkedIn is a professional networking site making ancillary use of audiovisual materials, like every other modern business with a meaningful internet presence. *Second*, Plaintiff fails to allege that she is a "consumer" of audiovisual materials—because she is not. Plaintiff admits she is a subscriber of LinkedIn's professional platform, not its learning webpage, and she does not allege that her subscription has any connection to the *one* LinkedIn-hosted video she specifically alleges viewing—nor could she, because that video is publicly available without *any* subscription. *Third*, Plaintiff fails to allege that LinkedIn disclosed the required "personally identifiable information" ("PII")—because it did not. Plaintiff's allegations on this basic VPPA element are defective and incomplete on their face. Further, as LinkedIn's concurrently filed Request for Judicial Notice ("RJN") makes clear, the material Plaintiff incorporated into her complaint by reference affirmatively demonstrates that LinkedIn could not have disclosed PII. *Fourth*, Plaintiff fails to allege the requisite scienter, and indeed fails even to try.

Plaintiff's sole cause of action should be dismissed for failure to state a claim. Because several of the defects in Plaintiff's pleading are incurable on amendment, dismissal should be with prejudice.

## II. BACKGROUND

### A. LinkedIn is a professional social networking site with side services hosting both public and subscription-only videos.

LinkedIn is a career- and professional-focused social network that helps its members build relationships and find the best opportunities for succeeding in their chosen industries. *See* Compl. at ¶ 6. LinkedIn also offers online learning modules tailored to employee training, professional development, and skill building, known as LinkedIn Learning. *See id.* at ¶¶ 5, 21-22. The LinkedIn Learning webpage is accessible as a part of the broader LinkedIn website at linkedin.com/learning. *Id.* at ¶ 1. Certain videos hosted on LinkedIn Learning may be available only with a paid LinkedIn Learning subscription; others may be generally available to the public without a subscription of any kind. *See id.* at ¶ 21; RJN at 5-6.

For individuals or small businesses seeking a more advanced social networking experience, LinkedIn also offers a paid subscription membership known as LinkedIn Premium. *See* Compl. at ¶ 5. LinkedIn Premium includes a number of features designed to enhance the networking, job search, and applicant search functions of the normal LinkedIn platform. It also includes, as part of its suite of features, access to paid LinkedIn Learning features. *Id.* at ¶¶ 5, 22.

### B. Plaintiff brings a single claim under the VPPA, without alleging disclosure of a user's identity or any private video information.

On February 3, 2025, Plaintiff initiated the present suit, bringing a single cause of action for a violation of the VPPA.[1] Specifically, Plaintiff alleges that she is a subscriber of LinkedIn Premium, and that she viewed videos hosted on LinkedIn Learning. *Id.* at ¶ 5. According to Plaintiff, she watched "several courses over the last few years." *Id.* However, Plaintiff names only one: "Nano Tips for Negotiating Your Salary with Sho Dewan," which Plaintiff allegedly

[1] Counsel for Plaintiff has recently filed several VPPA lawsuits containing, in multiple instances, allegations nearly identical to those in the complaint in in this case. *See, e.g.*, *Dawson v. National University*, Case No. 1:25-cv-03498 (N.D. Ill.) (filed Apr. 1, 2025) (Dkt. 1); *Dawson v. The University of Phoenix, Inc.*, Case No. 1:25-cv-03497 (N.D. Ill.) (filed April 1, 2025) (Dkt. 1); *Casper v. Dotdash Meredith, Inc.*, Case No. 1:25-cv-02613 (S.D.N.Y.) (filed Mar. 31, 2025) (Dkt. 1); *Kohn v. Crunchlabs, LLC*, Case No. 1:25-cv-00210 (E.D.N.Y.) (filed Jan. 14, 2025) (Dkt. 1). One such case was filed on the same day as the present case. *See Cai v. Datacamp, Inc.* (Case No. 1:25-cv-00954) (S.D.N.Y.) (filed Feb. 3, 2025) (Dkt. 1).

watched on October 11, 2023. *Id.* According to Plaintiff, in connection with her viewing the "Nano Tips" video, LinkedIn committed a VPPA violation by "sharing Plaintiff's video watching history and her PII with Facebook." *Id.*

Plaintiff alleges that LinkedIn did so by implementing a Meta Pixel on linkedin.com/learning. *See id.* at ¶ 23. Plaintiff points to generic product descriptions about how the Meta Pixel can function and how advertisers can customize what data the Meta Pixel collects. *See id.* at ¶¶ 18-20. But she alleges no facts describing LinkedIn's implementation of the Meta Pixel or what data it collects.

Plaintiff makes a handful of allegations in support of her theory that LinkedIn shared video watching history and PII in violation of the VPPA.

*First*, Plaintiff points to a screenshot titled "Your activity off Meta technologies." *Id.* at ¶5. The screenshot states that it was "[g]enerated by Courtney Cole on Friday, January 31, 2025"—that is, the business day before the complaint was filed. *Id.* However, Plaintiff does not identify the source of this screenshot or explain the data it supposedly contains. *See id.* Nor does Plaintiff identify what data in the screenshot, assuming it was transferred to Facebook (or Meta), supposedly disclose any videos viewed or the identity of any particular individual. *See id.* Nothing in the screenshot itself reveals either piece of information. *See id.*

*Second*, Plaintiff alleges that "each of [LinkedIn Learning]'s pages hosting video classes contained code for the Facebook Tracking Pixel," which allegedly "transmitted [LinkedIn Learning] URL data to Facebook." *Id.* at ¶ 23. According to Plaintiff, these URLs "described the contents of the videos to which they linked," thereby transmitting video watching history. *Id.* at ¶ 24. Plaintiff points to a screenshot supposedly substantiating her assertion. *Id.* at ¶ 23. But again, Plaintiff does not identify anything in this screenshot, titled "Meta Pixel Helper," that show URL data (or any other data reflecting a video title). *See id.* The screenshot contains a field labeled "URL called," but that field was not expanded to show its contents. *See id.* Nor does Plaintiff identify anything in the screenshot that discloses the identity of any particular individual. *See id.* Nothing in the screenshot itself reveals either piece of information. *See id.* Indeed, when one uses the Meta Pixel Helper browser extension on a LinkedIn Learning webpage and expands

the "Show" button next to the "URL called" field to reveal its contents, the Meta Pixel Helper displays a URL that contains neither video title nor content information. *See* Declaration of Jessica Liu ("Liu Decl.") at ¶¶ 8-11.

*Third*, Plaintiff alleges that LinkedIn's website "contain[s] code for at least eight different third-party Facebook cookies." Compl. at ¶ 26. According to Plaintiff, "the Facebook Tracking Pixel transmit[s] PII from these Facebook cookies to Facebook along with their URL data," provided that the viewer is "logged into Facebook" when "watching a video on [LinkedIn]." *Id.* at ¶ 27. Plaintiff points to a screenshot supposedly showing that "third-party Facebook cookies" transfer this data. *Id.* at ¶ 26. But again, Plaintiff does not identify any data in this screenshot that convey a video title or video watching history. *See id.* at ¶¶ 26-27. And nothing in the screenshot reveals this information. *See id.* Plaintiff's only specific allegation is that a single cookie—"the c_user cookie"—"contains a visitor's Facebook ID" in the form of a string of numbers. *Id.* at ¶¶ 27-28. Plaintiff does not identify *any* "third-party Facebook cookie" that allegedly transmits video titles or video watching history. *See id.* Nor does Plaintiff allege any facts showing that LinkedIn placed any "third-party Facebook cookie" on her browser—indeed, she does not even allege that the screenshot came from or otherwise reflects anything about her browser.

Finally, in the last sentence of her allegations, Plaintiff adds, without any explanation, that "the Facebook Tracking Pixel" is "integrate[d] with the Adobe Analytics platform." On this basis, Plaintiff also claims, without stating any facts, that LinkedIn "disclosed the video viewing activity, video watching data and PII of Plaintiff and other consumers with Adobe Inc. as well." *Id.* at ¶ 30. Plaintiff does not explain what it means for "the Facebook Tracking Pixel" to be "integrate[d]" with an Adobe platform; what the Adobe platform is; or how, when, or by whom any data is transmitted. Plaintiff includes no screenshots explaining her allegations. Plaintiff does not even explain how or why Adobe is supposedly related to LinkedIn (or Facebook, for that matter). "Adobe" appears nowhere else in the complaint, except when the same allegation is repeated as part of Plaintiff's one cause of action. *Id.* at ¶¶ 40, 42.

Plaintiff's complaint contains few other material allegations. Plaintiff does not allege that

she has a publicly visible or accessible Facebook account. Plaintiff does not allege that she "was logged into Facebook" when "watch[ing] a video on [LinkedIn]," as she herself states is necessary for operation of the Facebook Tracking Pixel. *Id.* at ¶ 27. Plaintiff does not even allege that she was logged into LinkedIn when watching the video that gave rise to Plaintiff's VPPA claim.[2] *See id.* at ¶¶ 5, 24.

## III. ARGUMENT

The "original impetus" of the VPPA arose from the publication of "a profile of Judge Bork based on a leaked list of 146 films that he and his family had rented from a local video store." *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1112 (9th Cir. 2025). The publication was "roundly criticized by members of the Senate Judiciary Committee holding hearings on Judge Bork's nomination" to the Supreme Court. *Id.* As a direct result, Congress passed the VPPA to "impose[] liability on any 'video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider.'" *Id.* (quoting 18 U.S.C. § 2710(b)(1)).

Plaintiff now seeks to apply the VPPA in circumstances wholly different from those that gave rise to it, having properly pleaded none of the essential elements of the cause of action. Plaintiff does not plausibly allege that LinkedIn is a video tape service provider ("VTSP") within the meaning of the VPPA. She does not plausibly allege that she is a VTSP consumer. She does not plausibly allege that LinkedIn has disclosed PII of any kind. And she does not allege the requisite scienter. Plaintiff's claim, and thus this case, should be dismissed with prejudice.

### A. Plaintiff fails to allege that LinkedIn is a "video tape service provider."

The VPPA defines a "video tape service provider" as any entity "engaged in the business" of delivering "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C.

[2] As noted in LinkedIn's concurrently filed Request for Judicial Notice, Plaintiff does not include this allegation because there is *no need to be logged in to LinkedIn* to view the video at issue. *See* Compl. at ¶¶ 5, 22. The video is publicly available at https://www.linkedin.com/learning/nano-tips-for-negotiating-your-salary-with-sho-dewan/what-recruiters-won-t-tell-you-about-your-salary. The video contents are publicly visible in the contents column, which reflects that the video contains two parts—"Navigating Your Salary Negotiation" and "Scripts You can Use When Negotiating Your Salary." Each part comprises several shorter videos (the "nano tips"), all of which are publicly visible, without logging into LinkedIn and without a LinkedIn account.

§ 2710(a)(4). This definition requires more than just an ancillary involvement in audiovisual services. Courts in this District have repeatedly explained that to be "engaged in the business" of audiovisual materials for purposes of the VPPA, an entity must be "substantially involved in the conveyance of video content to consumers [and] also significantly tailored to serve that purpose." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 718 (N.D. Cal. 2023) (quoting *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023)).

Plaintiff's allegations do not meet this standard. Plaintiff does not allege any facts showing that LinkedIn is "substantially involved" in audiovisual materials, or that it has "specifically tailored" its product "to serve audiovisual material[s]," beyond the website simply being capable of hosting videos in addition to numerous other content types. *See Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023). Nor could she do so because LinkedIn operates a professional networking platform, not an audiovisual business. *See* Compl. at ¶¶ 5-6. Likewise, subscribers to LinkedIn Premium, such as Plaintiff herself, pay for a suite of features focused on professional networking and job searching. *See id.* at ¶¶ 5, 21-22. Even for these paid LinkedIn memberships, LinkedIn Learning is offered as an incidental benefit. *Id.*

Rather, Plaintiff merely alleges, in conclusory fashion, that LinkedIn is a VTSP "because it has created, hosted, and delivered dozens of videos." *Id.* at ¶ 38. But that is not the test. Indeed, courts will not treat a business as a VTSP, and expose it to sweeping liability under the VPPA, simply because it is a "company that creates its own video content, however ancillary to the company's purpose." *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023). True to the original understanding and intent of the VPPA, which was focused on video rental stores, a business must be truly "engaged in the business" of delivering audiovisual material to qualify as a VTSP. 18 U.S.C. § 2710(a)(4); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage."). It is conceivable for a modern business to qualify as an appropriate analogue of the now-defunct video stores of the original VPPA. *See, e.g.*, *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017) (Vizio plausibly alleged to be a VTSP because its applications are "designed

to enable consumers to seamlessly access Netflix, Hulu, YouTube and Amazon Instant Video content," and Vizio is therefore in "'the business' of delivering video content"). But it is not enough for a business that is not directed to audiovisual services, such as LinkedIn, simply to make use of video for supplemental purposes. *See, e.g.*, *Walsh v. Cal. Cinema Invs. LLC*, 2024 WL 3593569, at *5 (C.D. Cal. July 29, 2024) (granting a motion to dismiss where "[Plaintiff] has made no allegations which suggest that delivering movie trailers is 'a focus of Defendants' work'"); *Hernandez v. Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023) (granting a motion to dismiss where "[t]he Complaint fails to allege how this and other videos are a central focus of Defendant's business"); *Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (e-commerce site not converted into a VTSP because it hosts promotional videos).

Were the rule otherwise, virtually every modern, internet-based business would be a VTSP, and exposed to liability under the VPPA. "District courts within the Ninth Circuit routinely reject this contention." *Carroll v. Chick-Fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024). In *Cantu*, for example, the district court rejected the notion that a business is "engaged in" providing audiovisual materials where it creates and hosts promotional video content, but the video content is not itself the business's "particular field of endeavor." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 994 (S.D. Cal. 2023). The court distinguished that situation from cases "where Defendant's website is . . . for gaming or entertainment *whose primary purpose is to deliver audio-visual content to users*." *Id.* at 995 (emphasis added). On that basis, the court granted a motion to dismiss the plaintiff's VPPA claim. *Id.* The same reasoning rules out VTSP status here. Although LinkedIn hosts audiovisual material, there is no plausible allegation that doing so is a primary purpose of LinkedIn's business—nor could there be.

### B. Plaintiff fails to allege that she is a "consumer" of video tape services within the meaning of the VPPA.

To state a claim under the VPPA, a plaintiff must also allege that a VTSP disclosed personally identifiable information from a "*consumer of such provider*." 18 U.S.C. § 2710(b)(1) (emphasis added). The VPPA further defines a "consumer" as "[a]ny renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

This element of the VPPA is not trivial, as it necessarily implies a connection between the consumer's commercial relationship with the VTSP and the provision of audiovisual materials. *Heather v. Healthline Media, Inc.*, 2023 WL 8788760, at *2 (N.D. Cal. Dec. 19, 2023) ("[T]he 'services' a subscriber receives are presumptively the same 'services' that would render [the defendant] a 'video tape service provider.'"). There must be, in other words, a "nexus between the plaintiff and defendant and the video content provided," or there is no "consumer" relationship under the VPPA. *Markels*, 689 F. Supp. 3d at 728. Where the defendant offers a subscription service, the VPPA requires "a factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content." *Tawam v. Feld Entm't. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023).

Plaintiff's allegations fall short on the "consumer" element of the VPPA in multiple ways.

*First*, Plaintiff does not allege that she was a consumer—specifically here, a "subscriber," 18 U.S.C. § 2710(a)(1)—of the LinkedIn product actually providing the audiovisual content at issue. Plaintiff alleges that she subscribed to LinkedIn *Premium*, not LinkedIn Learning. Compl. at ¶¶ 5-6. The two products serve different purposes, with LinkedIn Premium focusing on professional networking and job searching, and only incidentally providing access to LinkedIn Learning videos as part of a suite of other offerings. *Id.* at ¶¶ 5, 21-22. Further, Plaintiff alleges nothing about being a LinkedIn Premium subscriber that necessarily implies her subscription relationship (or any subscription relationship) is motivated by, or has any particular connection to, access to audiovisual materials. *See id.* And indeed Plaintiff suggests, if anything, just the opposite. Plaintiff names only one video she has viewed on LinkedIn Learning. *Id.* at ¶ 5. And she alleges that she only watched "several courses over the last few *years*." *See id.* (emphasis added). Courts in this district have previously dismissed VPPA claims on similarly inadequate allegations. *See, e.g.*, *Heather*, 2023 WL 8788760, at *2 (VPPA claims dismissed because subscribers transacted with "a predominantly written, not video, good or service").

*Second*, Plaintiff fails to allege that the one video she named, or *any* LinkedIn Learning videos she supposedly watched, were available only through her paid subscription. *See* Compl. at ¶ 5. Plaintiff alleges that she had a paid LinkedIn Premium account, and thus also had access to

paid LinkedIn Learning features. Compl. at ¶ 5. But Plaintiff does not allege that any video she watched was amongst those paid features. *See id.* This defect is fatal to Plaintiff's claim, as it eliminates the connection between "the subscription . . . and the [] allegedly actionable video content." *Tawam*, 684 F. Supp. 3d at 1061.

In *Carroll*, for example, the court rejected the plaintiffs' status as "subscribers" for VPPA purposes, as the plaintiffs failed to allege that they used the defendant's application "to access any videos that were not freely available on [the defendant's] websites." *Carroll*, 2024 WL 1091193, at *2. There was thus no "nexus between the app and the videos"—no plausible allegation "that they exchanged anything with [the defendant]" specifically "in relation to the video content" at issue—so the plaintiff could not plead a VPPA claim. *Id.* So too here. Plaintiff does not allege a transaction specifically in relation to the video content at issue—only that she viewed "videos on a website and, separately," subscribes to LinkedIn Premium. *Id.* These allegations are insufficient to meet the VPPA's consumer element.

Further, as LinkedIn has explained in its concurrently filed Request for Judicial Notice, this defect in pleading is not curable. Plaintiff *cannot* allege that the video she purportedly watched is accessible only to paid subscribers, because it isn't. *See* Compl. at ¶ 5; Declaration of Raisa Cramer ("Cramer Decl."), Ex. A. Like numerous videos on LinkedIn Learning webpages, the video "Nano Tips for Negotiating Your Salary with Sho Dewan" is publicly available, in full, from a logged-out state. *See* Compl. at ¶ 5. Again, this defect eliminates any possible nexus between Plaintiff's subscription and the allegedly actionable content. *See, e.g.*, *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) (no nexus between the subscriber and the audiovisual material if "any user can access the video on the Website"); *Markels*, 689 F. Supp. 3d at 728 (granting a motion to dismiss because plaintiffs did not allege that "they exchanged something of value . . . for the video content").

### C. Plaintiff fails to allege a disclosure of "personally identifiable information."

The VPPA defines PII as "includ[ing]," but not necessarily limited to, "information which *identifies a person* as having requested or obtained *specific video materials or services* from a *video tape service provider*." 18 U.S.C. § 2710(a)(3) (emphases added). Thus, a disclosure of PII

requires disclosure of three elements: (1) "a user's identity"; (2) "the identity of the video material"; and (3) "the connection between the two." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015). In deciding whether information satisfies these three elements, the Ninth Circuit applies an objective "ordinary person" standard. *Eichenberger*, 876 F.3d at 985. In other words, courts must ask whether the information allegedly disclosed "readily permits an ordinary person to identify a particular individual as having watched certain videos." *Id.* Importantly, the question is not whether the information allegedly disclosed would enable the actual recipient of the information to discover the video history. *Id.* Plaintiff's complaint is deficient in pleading all three essential elements of PII, each of which independently suffices for dismissal for failure to state a claim.

**1. The user's identity**

Plaintiff's allegations regarding disclosure of user identity are incomplete and conclusory.

*First*, Plaintiff fails to allege that she was logged into Facebook at the time she was watching any video on LinkedIn. By Plaintiff's *own* account, "transmit[ting] PII from . . . Facebook cookies to Facebook" requires that the user be "logged into Facebook" when "watching a video on [LinkedIn]." Compl. at ¶ 27. This defect alone warrants dismissal. *See Lambix v. Tesla, Inc.*, 737 F. Supp. 3d 822, 836 (N.D. Cal. 2024) (dismissal warranted where the plaintiff "plead[s] herself out of court").

*Second*, Plaintiff does not allege that the user identity data supposedly disclosed (a Facebook ID profile number) would enable her identification by an objective "ordinary person." *Eichenberger*, 876 F.3d at 985. As a starting matter, Plaintiff does not allege that an "ordinary person" would even know what to do with a Facebook ID—which is merely a string of numbers—much less to identify her specifically, and certainly not readily. Even assuming an "ordinary person" could clear that hurdle, a Facebook ID may yield no identifying information whatsoever if privacy settings restrict public access. *See* Compl. at ¶¶ 26, 28. Again, Plaintiff's *own* complaint acknowledges this limitation, then fails to include the necessary factual allegations. In the complaint, Plaintiff concedes that a Facebook ID allows someone to view only "personal information *publicly listed* on that profile." *Id.* at ¶ 28 (emphasis added). Courts have

routinely dismissed VPPA claims for this reason. *Smith v. Trinity Broad. of Texas*, Inc., 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) ("Despite having the opportunity to amend her complaint, [the plaintiff] still failed to allege that her profile is public and includes personal identifying information."); *Ghanaat*, 689 F. Supp. 3d at 720 (dismissing a VPPA claim based on the Meta Pixel where plaintiffs did "not allege their Facebook pages contain any personal [identifying] information").

*Third*, to make an allegation regarding transfer of PII, the complaint relies on screenshots that, even presumed accurate and complete for purposes of a motion to dismiss, show no such thing. The "Your activity" screenshot at paragraph 5 of the complaint does not identify anyone. *See* Compl. at ¶ 5. It identifies only the person who requested the "Your activity" log to be generated for purposes of inclusion in the pleading. *See id.* Similarly, the "Meta Pixel Helper" screenshot at paragraph 23 reveals nothing that points to a specific individual, nor does Plaintiff point to any such data. *See id.* at ¶ 23. Finally, Plaintiff includes an unlabeled screenshot, of unknown and unexplained origin, supposedly listing several "third-party Facebook cookies." *Id.* at ¶ 26. But nothing on the face of the screenshot plausibly suggests that LinkedIn is somehow involved. It's not even clear who took the screenshot, how they created it, and whose browser it purportedly depicts. Compounding the pleading defects further, Plaintiff does not allege that these same cookies were ever even present on her browser (either in general or specifically when watching a LinkedIn Learning video). And even if that were the case, she alleges neither where these cookies came from, nor who placed these cookies or for what purpose. *See id.* That pleading deficiency matters, as by Plaintiff's own allegation, it is implausible that LinkedIn would have had any involvement in placing those cookies on her or any other user's browser—after all, the cookies are allegedly "third-party Facebook cookies," not first-party LinkedIn cookies, and the "Domain" listed for each cookie is ".facebook.com." *Id.* at 28.

At most, Plaintiff identifies only *one* cookie that even colorably pertains to PII—the "c_user cookie" that "contains a visitor's Facebook ID" in the form of a string of numbers. *Id.* at ¶¶ 27-28. But again, Plaintiff does not allege that an "ordinary person" would or could even locate the "c_user cookie" or use the numbers associated with that cookie to identify her

specifically. *Eichenberger*, 876 F.3d at 985. And the Facebook ID *alone* falls well short of PII within the meaning of the statute, as it conveys nothing about video watching. 18 U.S.C. § 2710 (a)(3); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097. Plaintiff's allegation that the Meta Pixel "is configured to automatically collect . . . [the] 'cookie'" does not support any plausible inference that the cookies were actually transferred from a LinkedIn webpage to Facebook. Compl. at ¶ 20. As Plaintiff herself acknowledges, advertisers can and do customize their implementations of the Meta Pixel and the data it collects. *See id.* at ¶ 19-20. Yet the complaint alleges no facts regarding whether or how LinkedIn customized the Meta Pixel on its webpages, much less any allegation showing that LinkedIn configured the Meta Pixel to transfer cookies.

### 2. Identity of the video material

The complaint also fails to allege facts showing that LinkedIn transmits URLs containing "specific video materials or services" to Meta (or any other entity). 18 U.S.C. § 2710(a)(3). To make her allegations, Plaintiff relies specifically on the "Meta Pixel Helper" screenshot at paragraph 23. *See Compl.* at ¶¶ 23-24. According to Plaintiff, the screenshot shows that "each of the [LinkedIn pages] hosting video classes contained code for the Facebook Tracking Pixel which, among other things, transmitted URL data to Facebook." *Id.* at ¶ 23. But again, on its face the screenshot shows nothing of the sort. The screenshot shows only "One pixel found on www.linkedin.com." *Id.* The screenshot does not refer to any transmission of data. *See id.* It does not refer to any specific individual. *See id.* And it does not refer to any specific video content. *See id.*

Plaintiff takes pains to create a contrary impression about the "Meta Pixel Helper" screenshot. She repeatedly refers to LinkedIn URL information and alleges that the "Nano Tips" LinkedIn Learning URL reveals the title of the video she watched. *Id.* at ¶ 24 (referring to "the video course entitled Nano Tips for Negotiating Your Salary with Sho Dewan" at "the URL https://www.linkedin.com/learning/nano-tips-for-negotiating-your-salary-with-sho-dewan/what-recruiters-won-t-tell-you-about-your-salary"); *id.* at ¶ 5 (same). But here Plaintiff is attempting to plead by innuendo. The "Meta Pixel Helper" screenshot Plaintiff actually included in her factual allegations *does not show* URL information. *See id.* at ¶ 23. It shows a data field titled "URL

called," which Plaintiff tellingly opted not to expand, and thus to leave hidden. *See id.* As noted in LinkedIn's Request for Judicial Notice and the separate argument addressing the evidence Plaintiff incorporated into her complaint, *see infra* section III.D, there is likely a reason Plaintiff chose not to expand this data field, and reveal the URL data allegedly transmitted to Meta. For present purposes, however, it suffices that Plaintiff has not properly alleged the transmission of any data disclosing the identity of video material, which is an essential element of PII. 18 U.S.C. § 2710(a)(3); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097.

**3. The connection between the two**

Lastly, Plaintiff fails to allege sufficient facts that show her Facebook ID was transmitted to Facebook contemporaneously with any LinkedIn Learning URL, or that an ordinary person could associate these distinct data elements with one another to reveal Plaintiff's video history. *Eichenberger*, 876 F.3d at 985. Here, even setting aside the implausibility of her allegations, Plaintiff states at most only that the Meta Pixel transmits cookie information and separately sends video information in the form of a URL. *See* Compl. at ¶ 24. Plaintiff's allegations regarding both personal and video information are defective for numerous reasons, as previously noted. *See supra* sections III.C.1 and III.C.2. But in addition, Plaintiff fails to allege any facts showing that the two separate elements of PII are transmitted together or in any way capable of being subsequently paired, much less by an ordinary person.

This defect is not trivial. Separately transmitting user identity and video identity is not a VPPA violation. The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). For that reason, courts will reject VPPA claims where the user identity and video identity are not paired together. *In re Hulu Privacy Litigation*, 86 F. Supp. 3d at 1097 ("Neither the watch page URL nor the Facebook c_user cookie by itself constitutes PII as defined by the VPPA" because the "URL contains no user data at all" and "the Facebook c_user cookie does not contain any video watch information."). Absent allegations showing that an ordinary person was capable of "combining the Facebook User ID with the video title" allegedly transmitted, *id.*, Plaintiff's claim must be dismissed.

Finally, Plaintiff's throwaway allegation regarding transmission to "Adobe Analytics" fails for all of the same reasons noted above—and also because it is vague, unexplained, and conclusory. *See* Compl. at ¶ 30. Merely invoking Adobe Analytics does not lend Plaintiff's conclusory allegations any plausibility; in fact, the Ninth Circuit concluded in *Eichenberger* that the information the defendant allegedly disclosed to Adobe through the Adobe Analytics platform did not constitute PII under the VPPA. *See* 876 F.3d at 981-82. Here, no factual allegations support the assertion that PII or an element thereof is transmitted to Adobe—not the identity of the user, not the identity of video material, and not the connection between the two. Indeed, Plaintiff does not even allege when, how, or by whom data is transmitted; what specific data is allegedly transmitted; whose specific data is allegedly transmitted; or what it means for a Facebook Pixel to be "integrate[d]" with Adobe in the first place. Compl. at ¶ 30. Plaintiff's claim should be dismissed for failure to allege a disclosure of PII.

### D. Plaintiff's allegation regarding PII disclosure is implausible in light of judicially noticeable facts.

Although Plaintiff's deficient pleading alone is enough to warrant dismissal, facts that are both judicially noticeable and incorporated by reference into Plaintiff's complaint further render Plaintiff's conclusory allegations of PII disclosure wholly implausible. *See* RJN at 3-6; Liu Decl. at ¶¶ 8-11.

Plaintiff's theory of disclosure hinges on her allegation that the Meta Pixel "transmitted URL data to Facebook," and that "[t]he URLs disclosed to Facebook described the contents of the videos to which they linked." Compl. at ¶¶ 23-24. As purported factual support for the allegation that LinkedIn disclosed URLs containing video titles through the Meta Pixel, Plaintiff points to the fact that the URL for the "Nano Tips" webpage includes the video's title, and she includes the following screenshot from the Meta Pixel Helper:




*Id.* at ¶¶ 23-24. Put differently, Plaintiff alleges that LinkedIn disclosed the URL for the "Nano Tips" video to Facebook. But the screenshot shows no such thing on its face. It merely contains a field titled "URL called" without revealing what that URL is.

It's likely for good reason that Plaintiff left the "URL called" field unexpanded in the complaint. When one navigates to the webpage containing the "Nano Tips" video and clicks the "Show" button on the Meta Pixel Helper, the "URL called" field—which displays, as its name indicates, any URL information transferred to Meta—does not display or include in any way the URL of the "Nano Tips" webpage. *See* Liu Decl. at ¶¶ 8-10. Indeed, the "URL called" field reveals a URL that does not contain *any* URL information about the referring webpage, much less URL information that contains or otherwise discloses the contents of any video on a LinkedIn Learning webpage:




*Id.*

Plaintiff's allegations that LinkedIn discloses PII to Facebook are thus implausible in light of information incorporated by reference into Plaintiff's own complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice [or] . . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). Because Plaintiff has failed to plausibly allege that LinkedIn disclosed any PII to Facebook—not information about the contents of any video, and not information about her identity—her VPPA claim should be dismissed. *See Martin v. Meredith Corp.,* 657 F. Supp. 3d 277, 284-85 (S.D.N.Y. 2023) (dismissing VPPA claim where the allegedly transmitted webpage URLs did not contain video titles, did not reveal whether users viewed videos versus other non-video content,

and did not establish that users "requested or obtained specific video materials").

**E. Plaintiff fails to allege the requisite scienter.**

The VPPA includes a "knowingly" scienter requirement. 18 U.S.C. § 2710(b)(1). This requirement applies not just to the bare act of transmission, but to the transmission of PII specifically. As this Court held in *Hulu*, "a plaintiff must prove that the video-service provider *actually knew* that it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097 (emphasis added). Further, as noted, the Ninth Circuit's decision in *Eichenberger* clarified that PII is judged under an objective standard—meaning that an ordinary person must be able to decipher, from the information allegedly transmitted, the specific material viewed by a specific person. *Eichenberger*, 876 F.3d at 985.

Plaintiff fails to allege facts showing that LinkedIn "knowingly" transmitted PII—in other words, that LinkedIn knew that it was allegedly transmitting material from which a reasonable person could derive a specific individual's video watching history. Plaintiff offers only generalized, conclusory allegations about the operation of the Meta Pixel in the abstract. *See* Compl. at ¶¶ 23-24. These allegations are inadequate for *any* purpose. *Ferrantino v. San Juan Unified Sch. Dist.,* 2020 WL 5633004, at *3 (E.D. Cal. Sept. 21, 2020) ("Plausibility means pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). And they are particularly incapable of showing the requisite scienter, as the mere existence of a Meta Pixel says nothing about LinkedIn's knowledge of transmitting PII under the proper legal understanding of that term. *Eichenberger*, 876 F.3d at 985. Nothing in Plaintiff's allegations suggests that LinkedIn had knowledge, or could have knowledge, that any third party would receive data from which *an ordinary person* would be able to decipher the video-watching history of a specific individual.

*Hulu* is instructive. There, this Court held that lack of "a *known* connection between" the "c_user cookie[] and the title of the videos that that user watched" defeated a VPPA claim. *In re*

*Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097 (emphasis added). The court emphasized that without proof that Hulu knew "what, if anything, Facebook would do with the user-identifying information in the c_user cookie . . . [and] the video title that could be gleaned from watch-page addresses," there could be "no knowing disclosure of PII." *Id.* at 1099. So too here. Although *Hulu* arose at the summary judgment stage, the dispositive principle applies with equal force on a motion to dismiss standard—for purposes of a Rule 12(b)(6) motion, Plaintiff must plausibly allege LinkedIn's knowledge of transmission of PII, not just the transmission of data of some kind. *Iqbal*, 556 U.S. at 675 (courts "tak[e] note of the elements a plaintiff must plead to state a claim"). Because scienter is an essential element of a VPPA claim, Plaintiff's failure to allege scienter provides an independent ground for dismissal.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed for failure to state a claim. Because several of the defects in Plaintiff's complaint are incurable even under the forgiving standard for leave to amend, dismissal should be with prejudice.

Dated: April 18, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
NIALL M. FRIZZELL
RAISA M. CRAMER

Attorneys for Defendant
LINKEDIN CORPORATION