UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY COLE,<br><br>    Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>    Defendant. | Case No. 25-cv-01097-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

In this putative class action, plaintiff Courtney Cole alleges that defendant LinkedIn Corporation used the Facebook Tracking Pixel—a piece of code embedded in its LinkedIn Learning video-content platform—to transmit users' personally identifiable information to third parties Meta Platforms, Inc. ("Facebook") and Adobe, Inc. ("Adobe") in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. LinkedIn now moves to dismiss Cole's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court denies LinkedIn's motion to dismiss.

## BACKGROUND

Courtney Cole has been a user of Facebook, the world's largest social networking site, since 2009.[1] As a "real identity platform," Facebook limits users to one account and requires them to share their first and last name, date of birth, and gender when creating an account. Facebook assigns a unique "Facebook ID" to each user. By appending that Facebook ID to the URL "facebook.com," any person may view the user's Facebook profile "and all personal information publicly listed on that profile."

Facebook sells advertising space on its platform to generate revenue. Among other features

---
[1] For the purposes of LinkedIn's 12(b)(6) motion, the Court assumes the truth of the allegations in Cole's complaint.

1   it offers to advertisers, Facebook allows them to target particular groups of users whom the
2   advertisers believe will respond most favorably to their advertisements. One way advertisers may
3   do so is by using the Pixel. The Pixel "is a piece of code that advertisers … can integrate into their
4   website" to track users and the actions they take on the website. Advertisers determine which
5   specific data the Pixel tracks, which can include "what content a visitor views or purchases." Once
6   activated, the Pixel transmits the specified data to Facebook. Facebook then uses the data to target
7   advertisements toward Facebook users who have already visited the advertiser's website and
8   thereby shown an interest in the advertiser's product (or toward audiences similar to such users).

9         LinkedIn owns and operates LinkedIn Learning, "an online learning platform with over 27
10  million users." The platform "offers 24,300 video courses from over 3,900 industry experts and
11  thought leaders in over 20 languages." To access LinkedIn Learning, users "must subscribe to
12  LinkedIn Premium" for a monthly fee or gain access through an employer's business subscription.
13  Cole "has been a LinkedIn Premium subscriber since approximately February 2022" and
14  "[t]hrough that subscription … has had access to the LinkedIn Learning platform," which she has
15  used to "watch[] several courses over the last few years." As an example of Cole's use of LinkedIn
16  Learning, her complaint alleges that she watched a course titled *Nano Tips for Negotiating Your*
17  *Salary with Sho Dewan* in October 2023.

18        Cole alleges that, throughout the period of her subscription to LinkedIn Learning, the
19  platform "contained code for the Facebook Tracking Pixel," along with "at least eight different
20  third-party Facebook cookies[.]"As support for those allegations, the complaint includes
21  screenshots of an application titled "Meta Pixel Helper" stating that "[o]ne pixel [was] found on
22  www.linkedin.com" and a table listing eight cookies. Cole alleges that when a LinkedIn user who
23  "was logged into Facebook watched a video on [LinkedIn Learning], the Facebook Tracking Pixel
24  transmitted [data] from these … cookies to Facebook." The transmitted data included URLs for
25  the videos a user viewed on LinkedIn that "described the contents of the videos." "For instance,
26  the video course entitled *Nano Tips for Negotiating Your Salary with Sho Dewan* had the URL
27  https://www.linkedin.com/learning/nano-tips-for-negotiating-your-salarywith-sho-dewan/what-
28  recruiters-won-t-tell-you-about-your-salary." The transmitted data also included the LinkedIn

United States District Court
Northern District of California

1  Learning user's Facebook ID. In addition to transmitting this data to Facebook, LinkedIn
2  integrated the Pixel embedded in LinkedIn Learning with the Adobe Analytics platform, thereby
3  transmitting the URL and Facebook ID data to Adobe.
4      Cole asserts that the combination of URL and Facebook ID data that LinkedIn Learning
5  transmits via the Pixel permits the recipient of such data "to see who watched what video." On that
6  basis, she filed this action against LinkedIn claiming that LinkedIn disclosed her "personally
7  identifiable information" to Facebook and Adobe in violation of the VPPA. LinkedIn now moves
8  to dismiss Cole's complaint.

## LEGAL STANDARD

10     Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain
11 statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a
12 claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6).
13 Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable
14 inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
15 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a
16 cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*
17 *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
18 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
19 on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
20     In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the
21 complaint as true and construe the pleadings in the light most favorable" to the non-moving
22 party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal
23 conclusions "can provide the [complaint's] framework," the Court will not assume they are correct
24 unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept
25 as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
26 inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*
27 *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).
28     The Court may take judicial notice of "a fact that is not subject to reasonable dispute"

3

because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The doctrine of incorporation by reference permits the Court to treat an extrinsic document as if it were part of the complaint if the pleading "refers extensively to the document" or if "the document forms the basis" of a claim. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

## DISCUSSION

The VPPA prohibits any "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider" without the consumer's consent. *Id.* § 2710(b). LinkedIn argues that Cole's complaint fails to state a VPPA claim because (1) LinkedIn is not a "video tape service provider" covered by the VPPA; (2) Cole is not a "consumer" within the meaning of the VPPA; (3) LinkedIn did not disclose "personally identifiable information"; and (4) any disclosure by LinkedIn was not knowing. But when "construe[d] … in the light most favorable to" Cole, *Husayn v. Mitchell*, 142 F.4th 667, 670 (9th Cir. 2025), the complaint plausibly alleges every element of a VPPA claim.

### I.     Cole plausibly alleges that LinkedIn is a "video tape service provider."

The VPPA defines "video tape service provider" as "any person, engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). LinkedIn argues that Cole's complaint fails to plausibly allege that LinkedIn falls within this definition. The Court disagrees.

LinkedIn contends that to be a video tape service provider an entity must be "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose." *See, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F.Supp.3d 714, 718 (N.D. Cal. 2023) (quoting *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023)). LinkedIn argues that it does not meet this definition because it is primarily a "professional networking platform" and its subscribers "pay for a suite of features focused on professional networking and job searching," with LinkedIn Learning "offered as an incidental benefit."

LinkedIn's argument fails for two reasons. First, it relies on facts outside the complaint. Cole's only allegations about the nature of LinkedIn's services concern LinkedIn Learning, which

4

offers more than 24,000 "video courses designed to help people develop skills in business, technology, and creativity." The complaint contains no discussion of LinkedIn's services other than the video content on LinkedIn Learning. The complaint thus casts LinkedIn Learning as substantially—indeed, exclusively—involved in conveying audiovisual content and as "significantly tailored" to that purpose. LinkedIn's argument to the contrary "raises factual questions" about the nature and focus of its services that are "premature at the motion to dismiss stage." *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023).

Second, even were its argument supported by the complaint's allegations, LinkedIn's assertion that it primarily provides services other than video content still would not be fatal to Cole's claim. True, district courts in this circuit have held that merely creating video content, "however ancillary to the company's purpose," does not transform a company into a video tape service provider. *See, e.g.*, *Markels v. AARP*, 689 F.Supp.3d 722, 728 (N.D. Cal. 2023) ("*Markels I*"). But those same courts make clear that video production need not be a video tape service provider's "overarching focus or particular field of endeavor." *See Markels v. AARP*, No. 4:22-cv-05499-YGR, 2023 WL 12088678, at *2 (N.D. Cal. Dec. 18, 2023) ("*Markels II*"). To the contrary, video-content creation need only be "a focus" of the company to render it a video tape service provider. *See id.*; *Walsh v. Cal. Cinema Invs. LLC*, 2024 WL 3593569, at *5 (C.D. Cal. July 29, 2024); *see also Hernandez v. Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023) ("a central focus").[2] Multiple courts in this district have thus held that a complaint states a plausible VPPA claim where, as here, it alleges that the defendant regularly delivers video content to users

---

[2] Even this requirement lacks an apparent basis in the statutory text. The VPPA requires only that a video tape service provider be "engaged in the business" of delivering audiovisual materials. *See* 18 U.S.C. § 2710(a)(4). In other contexts, the Ninth Circuit has held that "an entity is engaged 'in the business of' where that entity buys or sells to further its commercial enterprise" or "regularly enter[s] into [exchange] in expectation of profit." *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1107 (9th Cir. 2001) (quoting *United States v. Van Buren*, 593 F.2d 125 (9th Cir. 1979)). "Nothing about the ordinary meaning of the words 'engaged' or 'business' indicates that the statutory definition should be understood to apply to those engaged *primarily* in this business. This 'engaged in the business of' language speaks to the *type* of business … , not to the *quantity* thereof." *Id.* (quoting *In re Magic Rests., Inc.*, 205 F.3d 108, 115 (3d Cir. 2000)). Cole's complaint clearly alleges that LinkedIn exchanges its videos for users' membership fees in the expectation of profit, such that it is "engaged in the business" of delivering audiovisual materials as that phrase is ordinarily understood.

1   and maintains a cache of such content, even if the defendant also offers other services. *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 798–99 (N.D. Cal. 2019) (social-networking site); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *2–3 (N.D. Cal. July 20, 2023) (gaming and entertainment site).

       Even the case on which LinkedIn relies most heavily weighs in Cole's favor. LinkedIn cites *Markels I*, in which another court in this district dismissed plaintiffs' VPPA claim because, among other reasons, the complaint failed to include any allegations about the extent of defendant AARP's provision of video content. *See* 689 F.Supp.3d at 728. Following that order, however, the plaintiffs amended their complaint to add specific allegations concerning the defendant's video-content services, including that the defendant "hosts nearly 5,000 videos on a variety of topics" and "derives substantial revenues" from "its member-only videos." *See Markels II*, 2023 WL 12088678, at *1. Considering these additional allegations in *Markels II*, the court denied the defendant's motion to dismiss the amended complaint and concluded that the plaintiffs had plausibly alleged that AARP was a video tape service provider. *Id.* at *2. Here, Cole's complaint is much closer to the amended complaint in *Markels II* than the deficient complaint in *Markels I*. As in *Markels II*, she alleges that LinkedIn Learning hosts thousands of videos on a wide variety of topics. Further, the complaint explains that access to LinkedIn Learning requires either an individual LinkedIn Premium subscription for $39.99 per month or a business subscription. Thus, like AARP, LinkedIn derives revenue from its subscriber-only videos.

       "Taking all allegations in the [complaint] as true as it must, the Court finds that [Cole] ha[s] plausibly alleged that delivery of video is 'a focus' of [LinkedIn]'s work and that [LinkedIn] is 'significantly tailored' to providing video content." *Id.* at *2 (quoting *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1221 (C.D. Cal. 2017)). Cole has thus plausibly alleged that LinkedIn is a video tape service provider.

**II.  Cole plausibly alleges that she is a "consumer" under the VPPA.**

       LinkedIn also contends that Cole has not plausibly alleged that she is a "consumer" within the meaning of the VPPA. The VPPA defines a "consumer" as "[a]ny renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

6

1  Courts generally agree that the ordinary meaning of "subscriber" connotes "some sort of 'ongoing

2  commitment or relationship between the user and the entity." *Jackson*, 2023 WL 4670285, at *3

3  (quoting *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015)); *see also Yershov*

4  *v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487–89 (1st Cir. 2016); *Ghanaat v.*

5  *Numerade Labs, Inc.*, 689 F.Supp.3d 714, 718 (N.D. Cal. 2023). "[T]here must be some 'factual

6  nexus' between the subscription and the video content" to give rise to a VPPA claim. *Carroll v.*

7  *Chick-fil-A, Inc.*, No. 23-CV-00314-RFL, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024)

8  (collecting cases).

9  Cole's complaint alleges that she is a "consumer" of LinkedIn's video-content services

10 because she is a paid "subscriber" to LinkedIn Premium, through which she has access to

11 LinkedIn Learning. LinkedIn argues, however, that Cole has not established a sufficient nexus

12 between her subscription and LinkedIn Learning's video-content services because she allegedly

13 subscribed to LinkedIn *Premium*, not LinkedIn *Learning*. As the complaint explains, however, it is

14 not possible for an individual to subscribe to LinkedIn Learning directly: The user must gain

15 access through either LinkedIn Premium or an employer's organizational subscription. And Cole

16 alleges that she used her LinkedIn Premium subscription to watch several LinkedIn Learning

17 videos, showing a connection between her subscription and the video content at issue.

18 LinkedIn also argues that Cole has failed to establish the requisite nexus between her

19 subscription and LinkedIn Learning's video content because she does not expressly allege that the

20 videos she watched could only be accessed with a subscription or account. *See Ellis*, 803 F.3d at

21 1258 (explaining that accessing video content for free, without providing any payment or personal

22 information, "does not a 'subscriber' make"). LinkedIn notes that the only video she specifically

23 alleges having watched, *Nano Tips for Negotiating Your Salary with Sho Dewan*, was visible

24 without a subscription or account as of April 18, 2025.[3] Even assuming the video was visible

---

[3] Because Cole's complaint repeatedly refers to and relies on the webpage for this video, the webpage is incorporated into the complaint by reference and properly before the Court. *See Khoja*, 899 F.3d at 1002. The version of the webpage provided by LinkedIn, however, is dated April 18, 2025. Because that date falls well after the filing of the complaint, it necessarily falls after the date on which Cole watched the video. While the Court can take judicial notice of the existence of the webpage on that date, it cannot thereby reach any conclusion about the state of the webpage (or its

7

1  without a subscription on the earlier date when Cole watched the video, Cole's complaint contains
2  sufficient factual allegations to infer that at least some of the videos she watched were accessible
3  only because she had an account or subscription. Cole alleges that "[t]o use LinkedIn Learning, …
4  users must subscribe to LinkedIn Premium for a cost of $39.99/month." Construed in the light
5  most favorable to Cole, this allegation suggests that viewing most LinkedIn Learning videos
6  requires a subscription. Cole also alleges that she "has been a LinkedIn Premium subscriber since
7  … 2022" and "*[t]hrough that subscription* … has watched several courses." The Court can
8  reasonably infer from this allegation that Cole used her paid subscription to watch video content to
9  which she would otherwise have lacked access. The complaint therefore pleads a sufficient nexus
10 between Cole's subscription and the video content.

**III.   Cole plausibly alleges that LinkedIn disclosed "personally identifiable information."**

Under the VPPA, an entity is liable only for disclosing personally identifiable information, 18 U.S.C. § 2710(b)(1). As the Ninth Circuit has explained, personally identifiable information is "that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Though LinkedIn argues otherwise, Cole has plausibly alleged that it disclosed her personally identifiable information.

Cole's complaint alleges that when a user watches videos on LinkedIn Learning while logged into a Facebook account, the Pixel transmits the videos' URLs "along with" the user's Facebook ID to both Facebook and Adobe. The URLs allegedly "describe[] the contents of the videos," for example by including the videos' titles. And Cole alleges that the Facebook ID allows "[a]nyone" to "identify a Facebook profile" and "all personal information publicly listed on that profile" by "appending the Facebook ID to the end of facebook.com." The complaint thus alleges that if an individual (1) is logged into Facebook when using LinkedIn Learning and (2) lists personal information on their public Facebook profile, LinkedIn discloses information from which

---

availability to the public) on the date that Cole watched the video.

8

1    an ordinary person could readily identify "a specific individual's video-watching behavior,"
2    *Eichenberger*, 876 F.3d at 985. Courts in this district have often found that plaintiffs state
3    plausible VPPA claims where, as here, they allege that defendants disclose video information and
4    users' Facebook IDs. *See Lee v. Plex, Inc.*, 773 F.Supp.3d 755, 772–73 (N.D. Cal. 2025)
5    (collecting cases). The same conclusion follows here.

      LinkedIn's arguments to the contrary are unavailing. It first takes issue with the screenshot of the "Meta Pixel Helper" application included in Cole's complaint. While the screenshot shows that the Pixel was embedded in LinkedIn Learning's website, it does not display a URL for any LinkedIn Learning video. The sole URL available from the Meta Pixel Helper application, in a field titled "URL called," links instead to Facebook.[4] LinkedIn insists that the "URL called" field describes all the URL data transmitted by the Pixel and that the screenshot thus conclusively demonstrates that LinkedIn does not transmit URL data that identifies particular LinkedIn Learning videos. But that is not the only reasonable interpretation of the screenshot. As Cole argues, the "URL called" field might describe the location to which the Pixel transmits information rather than the data being transmitted. On that view, the Meta Pixel Helper screenshot simply shows that a Pixel embedded in the LinkedIn Learning platform transmits data to Facebook, without revealing what that data is. The other allegations in the complaint then fill in the missing details, specifying that the Pixel transmits LinkedIn Learning URLs, which "describe[] the contents of the videos to which they linked" and thereby "identify what videos an individual has watched." While both LinkedIn's and Cole's interpretations of the screenshot are plausible, the Court must construe the complaint, including the screenshot, in the light most favorable to Cole. *Husayn*, 142 F.4th at 670.

      LinkedIn next argues that even if the complaint plausibly alleges that LinkedIn discloses *some* users' personally identifiable information, it fails to allege that LinkedIn disclosed *Cole's* personally identifiable information. LinkedIn notes that the complaint does not expressly state that

---

[4] In the screenshot in Cole's complaint, the "URL Called" field of the Meta Pixel Helper application is hidden. Because Cole relies on the screenshot of the application in stating her claim, the full screenshot—including the "URL Called" field—is incorporated by reference and the Court may consider it. *See Khoja*, 899 F.3d at 1002.

1   Cole used LinkedIn Learning while logged into Facebook, as she alleges is necessary for LinkedIn
2   Learning to transmit data to Facebook. But the complaint includes a screenshot from Cole's
3   Facebook account showing that Facebook received data about her from LinkedIn that Facebook
4   then linked to her account. Facebook plausibly could do so only because Cole was logged into her
5   Facebook account when using LinkedIn Learning. LinkedIn also notes that the complaint does not
6   expressly allege that Cole listed any personal information on her public Facebook profile. Some
7   courts in this district have held that where plaintiffs "do not allege their Facebook pages contain
8   any personal information" like "names or email addresses," they do not adequately allege that
9   disclosure of their Facebook IDs "result[s] in the sharing of any personal information." *Ghanaat*,
10  689 F.Supp.3d at 720. Unlike in those cases, however, Cole alleges that Facebook requires users
11  to provide their names, genders, and birthdays to the platform when creating an account,
12  suggesting that this information was listed on her public profile. And several courts in this district
13  have held that, even if a plaintiff's profile does not list their real name, it is plausible that the
14  plaintiff's Facebook ID "personally identifies" them because it is a "user name" unique to the
15  plaintiff. *See, e.g.*, *Sellers*, 2023 WL 4850180, at *4 (quoting *In re Hulu Priv. Litig.*, No. C 11-
16  03764 LB, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014)).

17         LinkedIn also argues that any information it disclosed about Cole's viewing history was
18  paired with voluminous other information and that an ordinary person would therefore have been
19  unable to sift through the morass of data to find the pieces that identified Cole and her video-
20  watching behavior. Again, LinkedIn's argument relies on facts not alleged in the complaint, which
21  does not discuss the other data disclosed alongside Cole's personally identifiable information. This
22  argument thus raises factual disputes better resolved on a motion for summary judgment. And in
23  any case, it is not clear that the manner in which a defendant discloses personally identifiable
24  information is relevant. As the Ninth Circuit explained in *Eichenberger*, the VPPA focuses on the
25  content of the disclosed information, i.e., whether an ordinary person who knows the information
26  could readily identify an individual and her video-watching behavior. *See* 876 F.3d at 985; *see*
27  *also* 18 U.S.C. § 2710(a)(3). Nothing in the statute suggests that a defendant can escape liability
28  by disclosing such information in a format that makes it less likely that an ordinary person

1   receiving the information would actually use it to identify an individual's video-watching
2   behavior.
3         Finally, LinkedIn argues that the personally identifiable information allegedly disclosed to
4   Facebook was transmitted by Facebook itself, not LinkedIn, as the cookies that allegedly collected
5   Cole's data for transmission were "third-party Facebook cookies, not first-party LinkedIn
6   cookies." As another court in this district explained in a similar case, however, "the complaint
7   alleges that [LinkedIn] transmits the information to Facebook by incorporating the [P]ixel into its
8   website. The Court must take these factual allegations as true … [LinkedIn]'s argument is a
9   factual dispute better suited to summary judgment or trial than a motion to dismiss." *Sellers*, 2023
10  WL 4850180, at *4.
11        In sum, Cole has plausibly alleged that LinkedIn disclosed her personally identifiable
12  information by transmitting the URLs of videos Cole watched on LinkedIn Learning "along with"
13  her Facebook ID, which together would "readily permit an ordinary person to identify [Cole]'s
14  video-watching behavior." *Eichenberger*, 876 F.3d at 985.

### IV.     Cole plausibly alleges that LinkedIn acted knowingly.

16        Cole has also plausibly alleged that LinkedIn's disclosure of personally identifiable
17  information was "knowing," as it must have been to support a claim under the VPPA. 18 U.S.C. §
18  2710(b). Courts in this circuit consistently hold that a VPPA plaintiff adequately pleads scienter
19  by alleging that a defendant "knowingly installed the … Pixel knowing that it transmits" users'
20  personally identifiable information. *Ghanaat*, 689 F.Supp.3d at 721; *see also Ade v. Viki, Inc.*, No.
21  23-cv-02161, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024); *Sellers*, 2023 WL 4850180, at
22  *5. Cole's complaint does just that, alleging that LinkedIn "knowingly disclosed [her personally
23  identifiable information] and video watching behavior" to Facebook and Adobe "because it
24  knowingly installed the Facebook Tracking Pixel" on LinkedIn Learning "and configured the
25  Facebook Tracking Pixel to integrate with the Adobe Analytics platform." LinkedIn argues that, to
26  establish the requisite scienter, Cole must ultimately *prove* that LinkedIn "actually knew that it
27  was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection
28  between the two." *In re Hulu Privacy Litig.*, 86 F.Supp.3d 1090, 1097 (N.D. Cal. 2015). Yet

United States District Court
Northern District of California

1  LinkedIn cites no authority holding that Cole must allege the basis for her contention that
2  LinkedIn had the necessary scienter with this degree of specificity at the pleading stage. *See id.* at
3  1091 (deciding a motion for summary judgment). For the purposes of this motion to dismiss,
4  Cole's allegation that LinkedIn knowingly installed the Pixel and configured it in a manner
5  resulting in the conveyance of her personally identifiable information to third parties sufficiently
6  pleads that LinkedIn knowingly disclosed her personally identifiable information.

## CONCLUSION

For the foregoing reasons, LinkedIn's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: October 20, 2025

P. Casey Pitts
United States District Judge

12